IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0904

_____

**FILED**
**May 20, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. RALPH A. LORENZETTI, JR.,
PROSECUTING ATTORNEY OF JEFFERSON COUNTY,
Petitioner

v.

THE HONORABLE DAVID H. SANDERS,
JUDGE OF THE CIRCUIT COURT OF JEFFERSON COUNTY,
AND ELIZABETH A. SHANTON,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION

WRIT GRANTED

_____

Submitted: March 4, 2015
Filed: May 20, 2015

Brandon C.H. Sims, Esq.
Assistant Prosecuting Attorney
of Jefferson County
Charles Town, West Virginia
Counsel for the Petitioner

Lisa A. Hopkins, Esq.
General Counsel
Dawn E. Warfield, Esq.
Associate General Counsel

Shawn R. McDermott, Esq.
Mills McDermott, PLLC
Martinsburg, West Virginia
Counsel for the Respondent

Vincent J. Smith, Esq.
Associate General Counsel
Amicus Curiae – Glen B. Gainer III,
West Virginia State Auditor


JUSTICE BENJAMIN delivered the Opinion of the Court.

CHIEF JUSTICE WORKMAN and JUSTICE LOUGHRY concur and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1.      Pursuant to the plain language of W. Va. Code § 12-3-10b (1996), each purchase of goods or services made using a state purchasing card in a manner contrary to the provisions of W. Va. Code § 12-3-10a (2007) or the rules promulgated pursuant to that section involves a distinct offense.

2.      W. Va. Code § 12-3-10b (1996) and W. Va. Code § 61-3-24d (1995) each contain elements the other does not, and punishment under these two statutes for conduct arising from the same act or transaction does not violate double jeopardy principles.

i

Benjamin, Justice:

The petitioner, Ralph A. Lorenzetti, Prosecuting Attorney of Jefferson County ("the State"), seeks a writ of prohibition pursuant to the original jurisdiction of this Court to prohibit enforcement of the September 5, 2014, order of the Circuit Court of Jefferson County, dismissing fifty-three counts of a fifty-four count indictment against respondent Elizabeth A. "Libby" Shanton. Each of the fifty-three dismissed counts alleged that Ms. Shanton used a state-issued purchasing card in violation of W. Va. Code § 12-3-10b (1996). The circuit court reasoned that the inclusion of these counts in the indictment offended double jeopardy principles. For the reasons set forth herein, we conclude that the circuit court erred by dismissing these fifty-three counts, abused its legitimate powers and deprived the State of its right to prosecute the case. Therefore, we grant the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The controversy in this case surrounds the use of a purchasing card ("P-Card") issued pursuant to West Virginia's Purchasing Card Program. The Purchasing Card Program was implemented in 1996 by the Legislature and is administered by the West Virginia State Auditor. W. Va. Code § 12-3-10a (2007). P-Cards provide "an alternative payment method" that make "the procurement and payment of goods and

1

services . . . more efficient." *Id.* According to the Auditor,[1] the Purchasing Card Program "obtain[s] greater accountability for purchases, improve[s] vendor payment cycles and save[s] the State money through a streamlined payment process and cost avoidance." The Auditor asserts that P-Cards are "the payment method utilized for millions of dollars in transactions involving essential state purchases."

Ms. Shanton was issued a P-Card while she was employed as Dean of Student Affairs at Shepherd University in Shepherdstown, West Virginia. Her responsibilities as Dean of Student Affairs involved organizing student programming, including meals, special events, and giveaways. Following an investigation by the Commission on Special Investigations, *see* W. Va. Code §§ 4-5-1 to -6, and the Purchase Card Program Oversight Division, Ms. Shanton was indicted in a fifty-four count indictment connected to her use of her P-Card. Count 1 of the indictment alleges that Ms. Shanton engaged in a fraudulent scheme in violation of W. Va. Code § 61-3-24d (1995)[2] by using her P-Card from July 1, 2011, to August 3, 2011, to make purchases of goods

---

[1] We wish to acknowledge the submission of a brief in this matter by amicus curiae Glen B. Gainer III, West Virginia State Auditor. We express our appreciation for his participation, and we have considered his position in our decision in this case. *See also* West Virginia State Auditor's Office, Purchasing Card Program, http://www.wvsao.gov/purchasingcard/ (last visited May 11, 2015) (providing information on the history and operation of the Purchasing Card Program).

[2] The text of this statute is provided *infra* Part III.A.2.

and services, totaling $85,932.67, that were not for an official state purpose but which Ms. Shanton claimed were for an official state purpose in a monthly P-Card transaction log. The remaining counts, counts 2 through 54, allege that Ms. Shanton engaged in fraudulent or unauthorized use of her P-Card in violation of W. Va. Code § 12-3-10b (1996)[3] by using the P-Card fifty-three times on specific dates between October 9, 2010, and August 2, 2012, to purchase goods and services that were not for official state purposes.[4]

Ms. Shanton filed three separate motions to dismiss the indictment. These motions attacked each of the fifty-four counts in the indictment on one or more of the following grounds: insufficiency, lack of jurisdiction, and unconstitutionality. On August 27, 2014, the circuit court held a conference call with the parties' counsel and requested that they submit additional factual information regarding the charges against Ms.

---

[3] The text of this statute is provided *infra* Part III.A.1.

[4] Ms. Shanton insists that all of the purchases described in the indictment were made in furtherance of her duties as Dean of Student Affairs at Shepherd University. The indictment alleges that Ms. Shanton unlawfully used her P-Card to purchase designer handbags, perfume, cosmetics, and party supplies. The indictment also alleges that she unlawfully used the P-Card to purchase windshield wiper blades and installation of the wiper blades on a 1999 Ford Expedition, white platform boots in size 7–8, New York Giants women's gray boyfriend briefs in size extra large, and New York Giants women's blue panties size extra large.

Shanton. The State filed a "Response to Factual Inquiries of the Court" on September 4, 2014.[5]

The circuit court entered an order on September 5, 2014, granting Ms. Shanton's motion to dismiss with regard to the counts alleging that Ms. Shanton engaged in fraudulent or unauthorized use of her P-Card in violation of W. Va. Code § 12-3-10b. The circuit court determined that counts 2 through 54 of the indictment violated principles of double jeopardy in two ways.

First, the circuit court determined that each swipe of the P-Card was part of a continuing offense; therefore, because each swipe of the P-Card did not give rise to a distinct offense, Ms. Shanton could only be charged with one violation of W. Va. Code § 12-3-10b. Accordingly, to avoid running afoul of double jeopardy principles, the circuit court collapsed counts 2 through 54 of the indictment into one single count.

Second, the circuit court determined that the elements of the crime described in counts 2 through 54 overlapped completely with the elements of count 1.

[5] Neither party alleges that the court's factual inquiries have bearing on the issues presented in this proceeding. The inquiries dealt with whether Ms. Shanton was provided with a budget or limit on spending when using the P-Card, whether other employees of Shepherd University made purchases similar to those made by Ms. Shanton, whether there are prohibitions against purchasing particular items with a P-Card, and whether the expense accounts submitted by Ms. Shanton were approved by her supervisor.

The court concluded that double jeopardy prevented charging Ms. Shanton with violating both statutes, and the court dismissed all counts in the indictment but count 1.

Determining that counts 2 through 54 must be dismissed for violating principles of double jeopardy, the circuit court declined to address Ms. Shanton's remaining questions of constitutionality regarding these counts. The court also declined to consider the issues raised by Ms. Shanton regarding the sufficiency of the indictment and the circuit court's jurisdiction.

The State now seeks a writ of prohibition to prohibit the circuit court from enforcing its September 5, 2014, order dismissing counts 2 through 54 of the indictment.

## II. STANDARD OF REVIEW

There are limited circumstances in which the State may request a writ of prohibition in a criminal matter. We have held that

> "[t]he State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus point 5, *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992).

5

Syl. pt. 2, *State ex rel. Sims v. Perry*, 204 W. Va. 625, 515 S.E.2d 582 (1999).

The State contends that the circuit court abused its legitimate powers and deprived the State of its right to prosecute its case against Ms. Shanton. We have held that when a petitioner contends that a circuit court has abused its legitimate powers, the Court will consider five factors in determining whether it will issue a writ of prohibition:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

Pursuant to these standards, our review will proceed by examining the error alleged by the State and whether that error constitutes an abuse of the circuit court's legitimate powers such that it deprived the State of its right to prosecute the case. Then, we will evaluate whether the *Hoover* factors weigh in favor of granting the requested writ of prohibition.

6

### III. ANALYSIS

**A. The circuit court has abused its legitimate powers and deprived
the State of its right to prosecute the case.**

The State contends that the question now before the Court is this: "Did the Circuit Court exceed its legitimate power in dismissing Counts 2 through 54 of the Indictment each of which charged the defendant with separate violations of West Virginia Code § 12-3-10b which statute criminalizes the Fraudulent or Unauthorized Use of a State Purchasing Card?" This question encapsulates two issues: (1) whether the circuit court erred by collapsing counts 2 through 54 into a single count, thereby effectively dismissing all but one of those counts, and (2) whether the circuit court erred by dismissing the condensed count, thereby dismissing all counts in the indictment alleging violations of W. Va. Code § 12-3-10b.

**1. The circuit court committed clear error by collapsing
counts 2 through 54 into a single count.**

The Legislature has "substantive power to define crimes and prescribe punishments." Syl. pt. 3, in part, *State v. Sears*, 196 W. Va. 71, 468 S.E.2d 324 (1996). The power of courts to convict and sentence defendants in accordance with the crimes proscribed by the Legislature is limited by the double jeopardy clauses of the West Virginia and United States constitutions, which prohibit, among other things, multiple punishments for the same offense. W. Va. Const. art. III, § 5 ("No person shall . . . be

7

twice put in jeopardy of life or liberty for the same offence."); U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."); syl. pt. 1, *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977) (in part) ("The Double Jeopardy Clause . . . prohibits multiple punishments for the same offense."). We have recognized that the protection against multiple punishments for the same offense

> "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent."

*State v. Gill*, 187 W. Va. 136, 141, 416 S.E.2d 253, 258 (1992) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)).

In determining whether double jeopardy principles have been violated by the prosecution of multiple violations of the same statute, courts must ascertain whether the offenses are part of the same "unit of prosecution" designated by the Legislature. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952). The unit of prosecution "determines what separates a single violation of the statute from multiple violations." *United States v. Diana Shipping Servs., S.A.*, 985 F. Supp. 2d 719, 727 (E.D. Va. 2013); *see also State ex rel. Porter v. Recht*, 211 W. Va. 396, 399, 566 S.E.2d 283, 286 (2002) ("[T]he analysis of whether a criminal defendant may be separately convicted

8

and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution." (internal quotation marks omitted)); *People v. Simon*, 266 P.3d 1099, 1106 (Colo. 2011) (en banc) (defining the unit of prosecution as "the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." (internal quotation marks omitted)); *see generally* syl. pt. 9, *State v. McGilton*, 229 W. Va. 554, 729 S.E.2d 876 (stating that convictions do not violate double jeopardy principles when "the facts demonstrate separate and distinct violations of the statute").

> Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice, and [f]ew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. In order to determine the proper unit of prosecution for a disputed statute, a district court is required to begin with the statutory text.

*Diana Shipping*, 985 F. Supp. 2d at 727 (citation omitted) (internal quotation marks omitted). When examining the statutory text, we look to the operative verb; it defines the offense described in the statute. *Porter*, 211 W. Va. at 399, 566 S.E.2d at 286 ("[I]t is axiomatic that the operative verb employed in the statute defines the offense . . . .").

Counts 2 through 54 of the indictment against Ms. Shanton allege violations of W. Va. Code § 12-3-10b. That statute provides:

> It is unlawful for any person to use a state purchase card, issued in accordance with the provisions of section ten-a of this article, to make any purchase of goods or services in a manner which is contrary to the provisions of section ten-a of

9

this article or the rules promulgated pursuant to that section. Any person who violates the provisions of this section is guilty of a felony and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, or fined no more than five thousand dollars, or both fined and imprisoned.

W. Va. Code § 12-3-10b (1996). On January 8, 2014, Senate Bill No. 267 was introduced, proposing the following amendments to W. Va. Code § 12-3-10b, with strike-throughs indicating language to be deleted from the 1996 version of the statute and underscoring indicating new language to be added:

It is unlawful for any person to use a state purchase card, issued in accordance with the provisions of section ten-a of this article, to make any purchase of goods or services in a manner which is contrary to the provisions of section ten-a of this article or the rules promulgated pursuant to that section: _Provided,_ That such action is a continuing offense beginning when the purchasing card is issued or obtained by the person and any county where a substantial or material element of the offense occurred has jurisdiction to prosecute the offense. Any person who violates the provisions of this section is guilty of a felony and, upon conviction thereof, shall be ~~confined~~ imprisoned in ~~the penitentiary~~ a state correctional facility not less than one nor more than five years, or fined no more than $5,000, or both fined and imprisoned.

Following numerous revisions by the Legislature, Senate Bill No. 267 was passed by legislative act ("the Act") on March 8, 2014, amending and reenacting W. Va. Code § 12-3-10b.[6] As amended by the Act, W. Va. Code § 12-3-10b (2014) now provides:

---

[6] The Act also amended and reenacted W. Va. Code § 6-9-2c (2014) (prohibiting fraudulent or unauthorized use of a local government purchasing card). The changes to the Code sections in the Act became effective on June 6, 2014.

(a) It is unlawful for any person to use a state purchasing card, issued in accordance with the provisions of section ten-a [§ 12-3-10a] of this article, to make any purchase of goods or services in a manner which is contrary to the provisions of section ten-a of this article or the rules promulgated pursuant to that section.

(b) It is unlawful for any person to knowingly or intentionally possess with the intent to use a purchasing card without authorization pursuant to section ten-a of this article or the rules promulgated pursuant to that section.

(c) Any person who violates the provisions of this section is guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined no more than $5,000, or both fined and imprisoned.

(d) A violation of this section may be prosecuted in the county in which the card was issued, unlawfully obtained, fraudulently used, used without authorization, or where any substantial or material element of the offense occurred.

Notably, the amended statute does not include the continuing offense language present in the bill originally introduced to the Legislature. However, the Act contains the following preamble:

AN ACT to amend and reenact . . . § 12-3-10b of said code, all relating to fraudulent or unauthorized use of purchasing cards; ensuring that the courts of West Virginia have jurisdiction over fraudulent or unauthorized use of purchasing cards; establishing jurisdiction; and *defining the conduct as a continuing offense*.

(Emphasis added).

11

The parties do not dispute that the controlling version of W. Va. Code § 12-3-10b in this case is the 1996 version of the statute.[7] The dispute here involves the effect of the preamble to the Act on the interpretation and application of the controlling statute, the 1996 version of W. Va. Code § 12-3-10b.

Statutory preambles are not part of the enacted law and "cannot control the enacting part of the statute which is expressed in clear and unambiguous terms." *Slack v. Jacob*, 8 W. Va. 612, 628 (1875). However, the Court has long held that

> [a] preamble may be consulted in some cases to ascertain the intentions of the Legislature. But it is chiefly from the main body the purview of the act, that the will of the Legislature is to be learned; when this is clear and express, the preamble will not avail to contradict it.

Syl. pt. 7, *id.*

_____

[7] The 2014 version of W. Va. Code § 12-3-10b has not changed the elements of the crime described therein, nor has it changed the possible penalties, and the Legislature has not expressed its intent that the newest version of the statute apply retroactively. Thus, the controlling version of the statute to the facts of this case is the 1996 version. *See* syl. pt. 4, *State v. Easton*, 203 W. Va. 631, 510 S.E.2d 465 (1998) ("'The Statute in force at the time of the commission of an offense governs the character of the offense, and generally the punishment prescribed thereby, unless, as provided by our statute, the defendant elects to be punished as provided in an amendment thereof.' Syllabus point 4, *State v. Wright,* 91 W.Va. 500, 133 S.E. 764 (1922)."); *In re Daniel H.*, 678 A.2d 462, 468 (Conn. 1996) ("In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature."); *see generally State v. Sessions*, 287 P.3d 497 (Utah 2012) (finding no error when the lower court ordered the maximum sentence under an older version of the controlling statute, where the newer version of the statute shared the same maximum sentence but had a shorter minimum sentence).

12

The circuit court, relying on the preamble to the Act, concluded in its September 5, 2014, order:

> [T]he recent legislative intent persuades this Court to construe the word "use" to refer to not singular swipes or verifications of the purchasing card, but the overall pattern of use, such that Counts 2 through 54 would necessarily be collapsed into one count of violation of W.Va. Code §12-3-10b in order to avoid running afoul of double jeopardy principles.

In its brief to this Court, the State maintains that "the Circuit Court's reasoning is flawed and clearly erroneous, based on the introductory paragraph of a Senate Bill rather than the actual language of the revised statute." The State asserts that the language of W. Va. Code § 12-3-10b (1996) is clear and unambiguous and that because the Legislature "omitted any reference to the criminal conduct being continuing in character, . . . the ordinary meaning of the language must be given to it: each offense is a separate offense, not a continuing offense."

Ms. Shanton contends that the circuit court correctly interpreted the statute and that it did not err by collapsing counts 2 through 54 of the indictment into one count. She proposes that "[l]ooking at the text of either the original statute under which [she] was charged or at the amended statute, the text does not express a clear indication of whether the offense is of a continuing nature." She insists that "to determine whether the

13

offense is of a continuing nature, a court must necessarily engage the rules of statutory interpretation." Ms. Shanton argues that "the operative verb ['use'] and unit of prosecution would support a reading that a violation of § 12-3-10b is a continuing offense and that [she] can only be charged once for a [sic] alleged continuing course of conduct."

Upon our review of the circuit court's order, we observe that the circuit court has skipped the vital first step in construing a statute: making a determination that the statute is ambiguous. "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970); *see also* syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011) ("'"A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)."). Thus, only when a court determines that a statute is ambiguous may it then go on to interpret the meaning of that statute by considering, among other things, language in a legislative act's preamble. *See* syl. pt. 7, *Slack*, 8 W.

14

Va. 612. If the statutory language is clear and unambiguous, the court must apply the statute as it is written.

Upon our review of W. Va. Code § 12-3-10b (1996), we determine that the statute is *not* ambiguous. The portion of the statute at issue is as follows:

> It is unlawful for any person *to use* a state purchase card, issued in accordance with the provisions of section ten-a of this article, to make *any purchase* of goods or services in a manner which is contrary to the provisions of section ten-a of this article or the rules promulgated pursuant to that section.

W. Va. Code § 12-3-10b (emphasis added). The word "use" when used as a verb can mean "[t]o employ for the accomplishment of a purpose; to avail oneself of" and "[t]o put into practice or employ habitually or as a usual way of doing something." *Black's Law Dictionary* 1776 (10th ed. 2014). The State argues that "use" in W. Va. Code § 12-3-10b (1996) refers to the employment of a P-Card to make a single purchase, and Ms. Shanton argues that the word refers to the employment of a P-Card to make a purchase or purchases over a period of time. We find that the meaning of the word as it is used in the statute can be deduced from the context in which it is used. *See State v. Ziska*, 334 P.3d 964, 967 (Or. 2014) ("Obviously, the verb 'use' can be 'used' in a variety of senses. . . . [To] reveal which sense the legislature had in mind . . . we look to the terms of the statute and how the words in dispute are used in context.").

15

Parsing the relevant statutory text according to the rules of grammar, we find that "use" acts as a transitive verb. All transitive verbs have objects, and the object provides the context for the transitive verb. *The Chicago Manual of Style* 5.96, at 229 (16th ed. 2010); *see also State v. Castleberry*, 293 P.3d 757, 764 (Kan. Ct. App. 2013) ("Focus on the object . . . is therefore critical to giving full effect to the term "use."); *Pizzo v. State*, 235 S.W.3d 711, 721 (Tex. Crim. App. 2007) ("[A] transitive verb . . . requires a direct object to complete the meaning of the sentence."). Here, the object of the transitive verb is "purchase." As used in the statute, "purchase" is a singular noun defined as "an instance of buying." *Black's Law Dictionary* 1429 (10th ed. 2014). Thus, the effect given to the transitive verb "use" by the singular object "purchase" is to limit "use" to a singular event. In other words, as it is employed in the statute, "use" can only be defined as a single incident of employing a P-Card. Therefore, each purchase made in violation of the statute constitutes a separate chargeable offense and a distinct unit of prosecution. Had the Legislature intended otherwise, it could have replaced the singular object with the plural object "purchases" or included language specifying that the unlawful "use" takes place over a period of time. *See, e.g.*, 18 U.S.C. § 1029(a) (2002) ("Whoever . . . (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . shall, if the offense affects interstate or foreign commerce, be punished . . . .").

Our reasoning here echoes our analysis in a comparable case, *State v. Green*, 207 W. Va. 530, 534 S.E.2d 395 (2000). In *Green*, the defendant obtained money orders for $40 each which she then altered to show $400 each, and she forged the endorsements on the money orders. 207 W. Va. at 533, 534 S.E.2d at 398. She presented the money orders to a bank in Huntington, West Virginia, which exchanged them for money. *Id.* The defendant was indicted on thirty-two counts of forgery, uttering, and obtaining goods by false pretenses. *Id.* at 532, 534 S.E.2d at 397. She entered into a plea deal whereby the State dismissed all of the counts of forgery and obtaining goods by false pretenses in the indictment in exchange for her entering a plea of guilty to ten counts of uttering. *Id.* She was sentenced to a one-to-ten year term of imprisonment on each count, with the first eight counts to be served consecutively and the remaining two counts to be served concurrently with the eighth count. *Id.* at 533, 534 S.E.2d at 398.

Following conviction, the defendant filed a habeas petition for post-conviction relief with this Court, "claiming that her consecutive sentences violated double jeopardy and proportionality principles." *Id.* The Court ordered the circuit court to conduct an omnibus hearing. *Id.* At the hearing, the defendant testified that, under the language of the controlling statute, "this was one crime [not ten]. I passed these money orders as a set of ten with one teller with one deposit slip. It was one transaction." *Id.* The circuit court concluded "that the conduct encompassed by the ten pleaded-to counts of the

indictment were part of one continuous transaction, thus warranting relief." *Id.* (internal quotation marks omitted).

On appeal, this Court disagreed and reversed the circuit court, concluding that the lower court had misconstrued the controlling statute, W. Va. Code § 61-4-5 (1961).[8] *Id.* at 538, 534 S.E.2d at 403. That statute states in relevant part with emphasis added: "If any person forge *any writing* . . . to the prejudice of another's right, or *utter* or attempt to employ as true *such forged writing*, knowing it to be forged, he shall be guilty of a felony . . . ." W. Va. Code § 61-4-5. In *Green*, the issue before the Court was whether the unit of prosecution was fixed by the number of money orders passed or the number of transactions. The State argued that "because the statute uses of [sic] the term 'writing' in its singular form, the proper unit of prosecution for uttering must correspondingly be the number of individual writings passed." *Id.* at 537, 534 S.E.2d at 402. The *Green* Court agreed with the State and recognized that "any," which is used in the statute in its singular form, is used in the context of the singular noun "writing." *Id.* at 537–38, 534 S.E.2d at 402–03. The Court concluded, "The only logical result that could be reached after examining § 61–4–5(a) is that each time a person utters a forged document, he shall be guilty of a felony." *Id.* at 538, 534 S.E.2d at 403 (internal quotation marks omitted).

---

[8] W. Va. Code § 61-4-5 was amended in 1998, but the language at issue in *Green* remained the same following the amendments.

In reaching this conclusion, the *Green* Court relied on the same rules of grammar that apply in the present case. In *Green*, the unit of prosecution was controlled by the operation of the transitive verb "utter," which means "to put or send . . . into circulation." *Black's Law Dictionary* 1781 (10th ed. 2014). "Writing," the object of the transitive verb, provides the context for interpreting the transitive verb. The Court determined that the Legislature used a singular noun as the object of the transitive verb. Use of a singular noun provides the context for "utter." In that context, as the Court concluded, the statute can only mean that each writing uttered in *Green* gave rise to one violation of W. Va. Code § 61-4-5.

Ms. Shanton asserts that *State ex rel. Porter v. Recht*, 211 W. Va. 396, 566 S.E.2d 283 (2002), which distinguishes itself from *Green*, is directly on point and supports her position. In *Porter*, the defendant was charged with twenty counts of false swearing. 211 W. Va. at 398, 566 S.E.2d at 285. These charges arose from two affidavits signed by the defendant that were each comprised of ten separate statements. *Id.* The State alleged that each separate statement—twenty in all—constituted separate violations of W. Va. Code § 61-5-2 (1923). *Id.* The defendant, on the other hand, argued that the charges were "multiplicitous" and violated double jeopardy principles. *Id.* W. Va. Code § 61-5-2 provides with emphasis added, "To willfully *swear* falsely, under oath or affirmation lawfully administered . . . on *any* occasion other than a trial for a felony,

19

concerning any matter or thing material or not material . . . is false swearing and is a misdemeanor."

In *Porter*, the State argued that according to *Green*, the use of the word "any" in W. Va. Code § 61-5-2 indicates that the Legislature intended that the statute "necessarily permits separate charges for each false statement set forth in an affidavit." 211 W. Va. at 399, 566 S.E.2d at 286. However, the *Porter* Court determined that "[w]hile this Court clearly focused on the singular nature of 'any' in reference to the writing required for a forgery in *Green*, it is the act of forgery that is key to the offense, and *not* the singular versus plural nature of the writings required to commit a forgery." *Id.* The Court continued:

> In determining whether the Legislature intended each false statement included in an affidavit, or the entire affidavit as a whole, as the unit of prosecution under the false swearing statute, we must look to the gravamen of the offense of false swearing. Rather than the making of the individual false statements, it is the act of willfully swearing to the truthfulness of those statements while under oath, whether they be singular or multiple in number, that is the essence of the charge of false swearing under West Virginia Code § 61–5–2. Given the mechanics of executing an affidavit, the act of swearing to the veracity of the statement(s) set forth cumulatively within the document occurs after the affidavit, complete with averments, has been prepared for the affiant's signature. While the signature is not an equivalent of the oath, it is the method by which the affiant indicates that he has sworn to the veracity of the statements set forth above his signature.

*Id.* at 399–400, 566 S.E.2d at 286–87. Accordingly, the Court held, "An affiant who commits the act of swearing to the veracity of one or more matters set forth in an affidavit may only be charged with a single count of false swearing within the meaning of West Virginia Code § 61–5–2 (1923) (Repl.Vol.2000)." Syl. pt. 2, *id.*

Ms. Shanton insists that *Porter* supports her position that "the operative verb 'to use' a state purchase card . . . encompasses any and all purchases of 'goods or services'" and that "[i]t is not a single use of the state purchase card that is an offense, but rather the person's overall use of the state purchase card, if such use is in a manner contrary to the code or rules." We disagree.

*Green* and *Porter* are distinguished by the operative verbs used in the statutes at issue in those cases. In *Green*, the operative verb "utter" is transitive; in *Porter*, the operative verb "swear" is intransitive and means "[t]o take an oath." *Black's Law Dictionary* 1677 (10th ed. 2014). "An intransitive verb does not require an object to express a complete thought . . . ." *The Chicago Manual of Style* 5.96, at 229 (16th ed. 2010). While consideration of words in the statute other than the operative verb— specifically, the direct object of the verb—was essential in ascertaining the meaning of the transitive verb in *Green*, the opposite was true in *Porter*. Because the operative verb in the present matter, which defines the offense, is transitive rather than intransitive, the analysis in *Green* is comparable, while the analysis in *Porter* is not.

21

Although we conclude that W. Va. Code § 12-3-10b is not ambiguous and does not require interpretation to discern legislative intent, we note that our construction thereof is consistent with our treatment of similar statutes. W. Va. Code § 61-3C-13(c) (1989) is one such instance. That statute provides, among other things, that a person is guilty of a felony when that person "knowingly, willfully and with intent to defraud . . . uses . . . any . . . access device [obtained without authority]." *See* W. Va. Code § 61-3C-13(a)(1) (defining "access device" as including "any card . . . that can be used . . . to obtain money, goods, services, or any other thing of value."). In *State v. Ross*, No. 12-0441, 2013 WL 2462166, at *1, *3 (W. Va. June 7, 2013) (memorandum decision), the defendant had been found guilty of three counts of fraudulent use of an access device in violation of W. Va. Code § 61-3C-13(c) after he used a stolen credit card in three different locations, and this Court upheld his conviction. In so doing, the Court implicitly recognized that use of an access device within the meaning of W. Va. Code § 61-3C-13(c) refers not to the continued employment of the stolen card over a period of time but to the individual swipes of the card.

The circuit court erred by applying a meaning to W. Va. Code § 12-3-10b that is contrary to the plain language used therein. We hold that pursuant to the plain language of W. Va. Code § 12-3-10b (1996), each purchase of goods or services made using a state purchasing card in a manner contrary to the provisions of the W. Va. Code §

22

12-3-10a (2007) or rules promulgated pursuant to that section involves a distinct offense. In view of this holding, we conclude that counts 2 through 54 of the indictment constitute distinct offenses, and prosecution under each count does not violate double jeopardy principles. Thus, the circuit court abused its legitimate powers by condensing counts 2 through 54 of the indictment into a single count. This abuse of power has deprived the State of its right to prosecute its case against Ms. Shanton.[9]

---

[9] In addition to challenging the indictment on double jeopardy grounds, Ms. Shanton also argues in her brief that counts 2 through 54 are insufficient as a matter of law because they do not substantially follow the language of the statute and do not fully inform the accused of the particular offense with which she is charged. We disagree.

Syllabus point 4 of *Ballard v. Dilworth*, 230 W. Va. 449, 739 S.E.2d 643 (2013), provides:

> "'An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007).

Counts 2 through 54 all accuse Ms. Shanton of committing the offense of fraudulent or unauthorized use of a P-Card in violation of W. Va. Code § 12-3-10b, thus informing her of the particular offense with which she is charged. Each of these counts includes the elements of the offense charged, to-wit: (1) use of a P-Card (2) to make any purchase (3) of goods or services (4) in a manner contrary to W. Va. Code § 12-3-10a or the rules promulgated pursuant to that section. *See* discussion of the elements of W. Va. Code § 12-3-10b *infra* Part III.A.2. Each count contains the following language that significantly tracks the language of the statute: "[S]he did use a state purchase card to make a purchase of goods and services in a manner contrary to the provisions of law, and/or for purchases which were not for official state purposes." Finally, each count describes with specificity when and how Ms. Shanton has allegedly violated W. Va. Code

(continued . . .)

**2. The circuit court committed clear error by dismissing every count alleging a violation of W. Va. Code § 12-3-10b.**

As discussed *supra*, the double jeopardy clause prohibits multiple punishments for the same offense. Syl. pt. 1, *Conner*, 160 W. Va. 680, 238 S.E.2d 529. We held in syllabus point 8 of *State v. Zaccagnini*, 172 W. Va. 491, 308 S.E.2d 131 (1983), that "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Accord Blockburger v. United States*, 284 U.S. 299, 304 (1932). This test is "traditionally regarded as 'a rule of statutory construction . . . [based on] . . . [t]he assumption underlying the rule . . . that [the Legislature] ordinarily does not intend to punish the same offense under two different statutes.'" *Gill*, 187 W. Va. at 142, 416 S.E.2d at 259 (first two alterations in original) (quoting *Whalen v. United States*, 445 U.S. 684, 691–92 (1980)). However, the test does not apply where

> the [L]egislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger* to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the [L]egislature intended to create separate offenses.

§ 12-3-10b, enabling her to assert an acquittal or conviction in order to prevent being placed twice in jeopardy. We conclude that the indictment is sufficient.

24

Syl. pt. 8, in part, *id.*

Below, the circuit court did not make any findings as to Legislative intent, instead skipping directly to applying the *Blockburger* test. Pursuant to *Blockburger*, the circuit court determined that the charges against Ms. Shanton alleging violations of both W. Va. Code § 12-3-10b and W. Va. Code § 61-3-24d violated her double jeopardy rights, stating in its order:

> [T]his [c]ourt discerns no substantial difference between one who acts with specific intent to deprive another of his property using false statements, and one who uses a purchasing card in a manner contrary to the rules of governing such use, where such use includes the verification that said use was permitted (thus in so doing, employing the false representation that such use was permitted). The other elements of these statutes, West Virginia Code §61-3-24d and West Virginia Code §12-3-10b(a), align . . . . Thus, this Court agrees with the defendant that [she] can only be charged with either a violation of Section 12-3-10b or a violation of W. Va. Code §61-3-24d.

(Internal quotation marks omitted).  In seeking this writ, the State asserts that it the circuit court erred by dismissing counts 2 through 54 of the indictment.

In our *de novo* review, we begin by examining the factual allegations contained in the indictment. Count 1 alleges that Ms. Shanton committed the offense of fraudulent schemes in violation of W. Va. Code § 61-3-24d in connection with her use of her P-Card between July 1, 2011, and August 3, 2011. Of the remaining fifty-three counts

25

in the indictment, all of which allege that Ms. Shanton committed the offense of fraudulent or unauthorized use of a P-Card in violation of W. Va. Code § 12-3-10b, only one of those counts can be construed as alleging unlawful P-Card use during the timeframe described in count 1 of the indictment. That count, count 14, alleges that Ms. Shanton used her P-Card on July 27, 2011, to purchase merchandise totaling $160.06. Because the prohibition against multiple punishments for the same offense is not implicated where the alleged crimes do not arise from the same act or transaction, counts 2 through 13 and counts 15 through 54 do not offend double jeopardy principles. While it is not clear in the indictment whether the conduct described in count 14 is part of the same transaction described in count 1, upon application of the analysis required by syllabus point 8 of *Gill*, it is evident that punishments under both W. Va. Code § 12-3-10b and W. Va. Code § 61-3-24d for conduct arising from the same act does not violate double jeopardy principles.

The first step of the *Gill* analysis requires courts to determine whether the Legislature expressed clear intent that actions violating both W. Va. Code § 12-3-10b and W. Va. Code § 61-3-24d constitute one offense or multiple offenses. W. Va. Code § 12-3-10b (1996), quoted *supra* Part III.A.1, does not include any language in the statute itself nor its legislative history indicating the Legislature's desire to create multiple offenses and punishments for the same conduct. On the contrary, W. Va. Code § 61-3-24d does contain a relevant provision. That statute provides:

(a) Any person who willfully deprives another of any money, goods, property or services by means of fraudulent pretenses, representations or promises shall be guilty of the larceny thereof.

(b) In determining the value of the money, goods, property or services referred to in subsection (a) of this section, it shall be permissible to cumulate amounts or values where such money, goods, property or services were fraudulently obtained as part of a common scheme or plan.

(c) *A violation of law may be prosecuted under this section notwithstanding any other provision of this code*.

W. Va. Code § 61-3-24d (emphasis added).

In *State v. Coles*, 234 W. Va. 132, 763 S.E.2d 843 (2014), the Court examined W. Va. Code § 61-3-24d(c) and held in syllabus point 4:

The Legislature has made clear that the fraudulent scheme offense under W. Va. Code § 61-3-24d (1995) (Repl.Vol.2010) is a separate offense that may be prosecuted in addition to any other offense under the Code. Therefore, double jeopardy principles do not preclude a conviction and sentence . . . for any other offense arising out of the same transaction or occurrence.

(In part). However, *Coles* was decided thirteen days *after* the circuit court's order was entered in this case. At the time the order was entered, syllabus point 7 of *State v. Rogers*, 209 W. Va. 348, 547 S.E.2d 910 (2001), set forth the controlling law:

The provision in West Virginia Code § 61–3–24d (1995) (Repl.Vol.2000) [defining the crime of larceny by fraudulent scheme] found in subsection (c), which reads, "A violation of law may be prosecuted under this section notwithstanding any other provision of this code," does not express a clear legislative intent to create a separate and distinct offense, with separate, additional punishment for the same acts.

27

Because *Coles* was decided after the circuit court entered the order on appeal, *Rogers* must control in this case. *Coles* cannot be applied retroactively because doing so would permit W. Va. Code § 61-3-24d to function as an ex post facto law by allowing, particularly where two or more crimes involve the same elements, greater punishments than might have been anticipated when the crime was committed. *See Bouie v. City of Columbia*, 378 U.S. 347, 353–54 (1964) ("[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law . . . . If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." (internal quotation marks omitted)).[10] Consequently, we must consider whether the circuit court correctly decided the case pursuant to *Rogers*.

Because *Rogers* controls, we are constrained by the holding in syllabus point 7 to find no clear legislative intent in W. Va. Code § 61-3-24d indicating that the

---

[10] The U.S. Supreme Court has held that ex post facto laws include "'[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Peugh v. United States*, ___ U.S. ___, ___, 133 S. Ct. 2072, 2081 (2013) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). Both the United States Constitution and the West Virginia Constitution prohibit the passing of ex post facto laws. U.S. Const. art. I, § 9, cl. 3; W. Va. Const. art. III, § 4.

statute was intended to provide a separate punishment for the same acts giving rise to a violation of another statutory provision. Therefore, our analysis must continue on to the second part of the analysis set forth in syllabus point 8 of *Gill*: application of the *Blockburger* test. Under this test, if each offense requires an element of proof the other does not, double jeopardy principles are not offended by charging the defendant with both crimes.

The full text of W. Va. Code § 12-3-10b (1996) is quoted *supra* Part III.A.1. The elements of that crime are summarized as follows: (1) use of a P-Card (2) to make any purchase (3) of goods or services (4) in a manner contrary to W. Va. Code § 12-3-10a or the rules promulgated pursuant to that section. The elements of W. Va. Code § 61-3-24d, which is quoted *supra*, are summarized as follows: (1) willful deprivation (2) of any money, goods, property or services (3) of another person (4) by means of pretenses, representations, or promises (5) that are fraudulent. *See Rogers*, 209 W. Va. at 358, 547 S.E.2d at 920.

The circuit court did not discern any difference between the elements of the two crimes. This conclusion is clearly erroneous. Unlike W. Va. Code § 12-3-10b, W. Va. Code § 61-3-24d requires that a defendant have used pretenses, representations, or promises that were fraudulent. Additionally, W. Va. Code § 12-3-10b contains elements

29

that do not appear in W. Va. Code § 61-3-24d, including use of a P-Card and action that is contrary to W. Va. Code § 12-3-10a or the rules promulgated pursuant to that section.

We conclude that both W. Va. Code § 12-3-10b and W. Va. Code § 61-3-24d each contain elements that the other statute does not. Therefore, pursuant to *Gill* and *Blockburger*, a charge under each of these statutes for conduct arising out of the same transaction or occurrence does not offend double jeopardy principles. We now hold that W. Va. Code § 12-3-10b (1996) and W. Va. Code § 61-3-24d (1995) each contain elements the other does not, and punishment under these two statutes for conduct arising from the same act or transaction does not violate double jeopardy principles. Accordingly, the circuit court abused its legitimate powers by dismissing every count in the indictment alleging a violation of W. Va. Code § 12-3-10b, and this action deprived the State of its right to prosecute its case against Ms. Shanton.

**B. The writ of prohibition should issue**

*Hoover* requires that the Court consider five factors in determining whether it should issue a writ of prohibition. Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12, *quoted supra* Part II. The parties dispute whether the factors weigh for or against granting the writ.

First, Ms. Shanton asserts that the State may seek a direct appeal, and that this weighs against granting the writ. She claims that a direct appeal is available pursuant to W. Va. Code § 58-5-30 (1998) (permitting the state to appeal the dismissal of an indictment "held bad or insufficient by the judgment of a circuit court") because "[c]ounts 2 through 54 of the Indictment were clearly dismissed for being bad and/or insufficient." She cites to *State v. Lewis*, 188 W. Va. 85, 95, 422 S.E.2d 807, 817 (1992), which provides that "if the adverse ruling involves the sufficiency of an indictment, which can be appealed under W.Va.Code, 58–5–30, there is no need for the State to use prohibition because it has an adequate remedy." *See also State ex rel. Forbes v. Canady*, 197 W. Va. 37, 42, 475 S.E.2d 37, 42 (1996) ("Although the State does not have the ability to appeal the dismissal of an indictment when it is not bad or insufficient, we recognize that the State is armed with another right of appellate review in the form of prohibition."), *superseded by rule on other grounds as recognized in State v. Hartman*, 229 W. Va. 749, 735 S.E.2d 898 (2012).

We disagree with Ms. Shanton's assertion that the circuit court dismissed counts 2 through 54 of the indictment for being "bad or insufficient." In *Forbes*, the Court explained that

> [a]n indictment is bad or insufficient for purposes of analysis under W. Va.Code 58–5–30 when within the four corners of the indictment it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she may be prepared to meet; and (2)

31

> fails to contain sufficient accurate information to permit a plea of former acquittal or conviction.

197 W. Va. at 41, 475 S.E.2d at 41 (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)). The circuit court's order does not indicate that the indictment was bad or insufficient. Additionally, the order does not include any findings that the indictment failed to contain all of the elements of the offense addressed therein, that the indictment failed to apprise Ms. Shanton of what she must be prepared to meet, or that the indictment failed to contain sufficient accurate information to permit a plea of former acquittal or conviction. It is clear that this indictment was *not* dismissed for being bad or insufficient. *See id.* ("[B]ecause there is no contention that the indictment failed to contain all the elements of the offense of malicious assault, or that it did not sufficiently apprise the defendant of what he was prepared to meet, or that it failed to contain sufficient accurate information to permit a plea of former acquittal or conviction, then the potential dismissal of the indictment has nothing to do with its being bad or with its sufficiency."). Thus, W. Va. Code § 58-5-30, does not permit an appeal in this case. Indeed, the Court has recognized that "prohibition is an appropriate method for the State to challenge the dismissal of an indictment." *State ex rel. State v. Gustke*, 205 W. Va. 72, 76, 516 S.E.2d 283, 287 (1999). The first *Hoover* factor therefore weighs in favor of granting the writ requested by the State.

The second *Hoover* factor—whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal—also weighs in favor of the State.

32

The State would be foreclosed from challenging the dismissal of the counts on appeal following trial. *See Lewis*, 188 W. Va. at 89, 422 S.E.2d at 811 ("[T]he State's right to an appeal in a criminal case is contained in W.Va.Code, 58–5–30, and is confined to those cases where an indictment is held bad or insufficient by the judgment or order of the circuit court[.]" (internal quotation marks omitted)).

The third *Hoover* factor, which involves the determination of whether the circuit court committed clear error as a matter of law, weighs in favor of granting the writ in the present case. As set forth in Part III.A. *supra*, the circuit court clearly erred when it condensed counts 2 through 54 of the indictment into a single count and when it dismissed that condensed count. Pursuant to *Hoover*, we provide this factor substantial weight.

The fourth *Hoover* factor—whether the error is an oft repeated error—does not weigh in favor of granting the writ. Neither party has alleged that W. Va. Code § 12-3-10b has been consistently misapplied.

Finally, the fifth *Hoover* factor, which weighs in favor of granting a writ of prohibition where an issue of first impression is presented, is supportive of the State's position. As the State points out in its brief, W. Va. Code § 12-3-10b "has not been the

33

subject of any decisions of this [C]ourt." In the present matter, we have addressed the issue of first impression by creating a new syllabus point.

In summary, the first, second, third, and fifth *Hoover* factors weigh in favor of granting the State's requested writ of prohibition. Pursuant to *Hoover*, we conclude that the State is entitled to the writ it seeks.

## IV. CONCLUSION

For the reasons set forth above, we conclude that the circuit court has abused its legitimate powers and denied the State the right to prosecute its case against Ms. Shanton. Further, we conclude that the *Hoover* factors weigh in favor of granting the requested writ of prohibition to prohibit enforcement of the circuit court's order entered September 5, 2014. Accordingly, we grant the writ, vacate the September 5, 2014, order, and remand this case for further proceedings consistent with this opinion.

Writ granted.