## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Petitioner**

**FILED**
**November 21, 2109**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 18-0438** (Marion County 17-F-158)

**Ryan Ashley Hubbs,**
**Defendant Below, Respondent**

### MEMORANDUM DECISION

Petitioner, the State of West Virginia (the "State"), by counsel, Jeffrey L. Freeman,[1] appeals the April 24, 2018 order of the Circuit Court of Marion County, West Virginia, granting Respondent Ryan Ashley Hubbs's ("Mr. Hubbs") motion to dismiss his Marion County indictments of two counts of murder in the first degree, upon the theory of felony murder. On appeal to this Court, Petitioner contends that the circuit court erred by granting the motion to dismiss and finding that the prohibition against double jeopardy precluded Marion County's prosecution of Mr. Hubbs for two counts of murder in the first degree, upon a felony murder theory, subsequent to Mr. Hubbs's plea of guilty to the predicate felony of robbery in Lewis County, West Virginia.[2] Mr. Hubbs, by counsel, Matthew S. Delligatti and Ashley Joseph Smith, counters that the Marion County indictments are barred by the principles of double jeopardy.

This Court has considered the parties' briefs, their oral arguments, and the appendix record on appeal. Upon consideration of the Rules of Appellate Procedure, the briefs, the oral arguments, and the appendix record presented, the Court finds that the State's appeal is not appropriate for review on direct appeal. In order to explain the merits of this procedural determination, this Court has concluded that a memorandum decision, rather than an order, is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying facts of this matter are tragic. On October 13, 2016, Mr. Hubbs committed a robbery in the City of Weston in Lewis County, West Virginia. According to the State, Mr. Hubbs threatened the victim, Sara Crum ("Ms. Crum"), with a 9 mm Beretta handgun in a Rite-Aid parking lot in Lewis County. Mr. Hubbs then stole Ms. Crum's vehicle and fled the scene. Approximately two hours later, Mr. Hubbs, still in Ms. Crum's vehicle, sped through a red light in

---

[1] This Court notes that although Marion County Prosecuting Attorney Jeffrey L. Freeman filed the original Notice of Appeal and Petitioner's Brief on behalf of the State of West Virginia, the State was represented by Karen Villanueva-Matkovich, Deputy Attorney General of the West Virginia Attorney General's Office, during oral argument.

[2] We note that during oral argument the State chose not to further the arguments as stated in its brief. Moreover, while the State attempted to deny conceding error, the impact of its comments during oral argument is an effective concession.

1

the Town of Whitehall, Marion County, West Virginia, and collided with another car. The occupants of the second car, David and Sandra Glasscock (the "Glasscocks"), were both killed as a result of the car accident.

On November 7, 2016, Mr. Hubbs was first indicted in Lewis County on one count of robbery in the first degree and one count of grand larceny. Subsequently, on October 2, 2017, Mr. Hubbs was indicted in Marion County on two counts of murder in the first degree, on the theory of felony murder with the underlying predicate crime being Mr. Hubbs's robbery of Ms. Crum's car.[3] On October 30, 2017, Mr. Hubbs pled guilty in Lewis County to the lesser-included offense of robbery in the second degree. The Circuit Court of Lewis County sentenced Mr. Hubbs on November 7, 2017, to not less than ten, nor more than eighteen, years in prison, due to a second offense felony enhancement.

Following the entry of his plea agreement and sentencing on the second degree robbery charge in Lewis County, on March 26, 2018, Mr. Hubbs filed a motion to dismiss the Marion County indictment charging the two counts of murder in the first degree. Mr. Hubbs's motion to dismiss was based upon principles of double jeopardy. Mr. Hubbs argued specifically that he "has already been convicted and sentenced on the underlying enumerated felony (robbery) in Lewis County. The Lewis County prosecuting attorney chose not to charge Mr. Hubbs with felony murder[;] such decision now serves as a bar to prosecution in the instant case." On April 6, 2018,

---

[3] Specifically, the State contends that Mr. Hubbs remained in active flight from the robbery in Lewis County until the vehicle accident in Marion County. Furthermore, Count I of the Marion County indictment stated that

> [t]he Grand Jurors of the State of West Virginia, in and for the citizens of Marion County, upon their oaths, charge that, on or about the 13th day of October, 2016, in the County of Marion, State of West Virginia, RYAN ASHLEY HUBBS committed the offense of MURDER IN THE FIRST DEGREE, by unlawfully, feloniously, willfully, maliciously, intentionally, deliberately and premeditatedly slaying, killing and murdering, Sandra Glasscock, during the commission of and flight from the felony offense of Robbery in the First Degree, resulting in the death of Sandra Glasscock, in violation of W. Va. Code §§ 61-2-1 and 61-2-2, against the peace and dignity of the State.

Count II of the Marion County indictment stated that

> [t]he Grand Jurors of the State of West Virginia, in and for the citizens of Marion County, upon their oaths, charge that, on or about the 13th day of October, 2016, in the County of Marion, State of West Virginia, RYAN ASHLEY HUBBS committed the offense of MURDER IN THE FIRST DEGREE, by unlawfully, feloniously, willfully, maliciously, intentionally, deliberately and premeditatedly slaying, killing and murdering, David Glasscock, during the commission of and flight from the felony offense of Robbery in the First Degree, resulting in the death of David Glasscock, in violation of W. Va. Code §§ 61-2-1 and 61-2-2, against the peace and dignity of the State.

the State filed its response to Mr. Hubbs's motion to dismiss the Marion County indictment arguing that double jeopardy did not bar further prosecution in Marion County because the individuals who died as a result of the car incident and the individual who was robbed were separate and distinguishable victims. On April 9, 2018, Mr. Hubbs filed his reply. Following a hearing on the motion to dismiss, the Circuit Court of Marion County dismissed the indictment by order entered April 24, 2018. In its order, the circuit court reasoned that "Mr. Hubbs has entered a guilty plea for the lesser included offense of robbery, which has been accepted by the Court in Lewis County, and on which he has been sentenced–thereby, barring the pursuit of the felony murder charge here in Marion County." It is from this order that the State seeks to appeal.

Because this is an appeal in a criminal matter brought by the State, we first must examine the threshold issue of whether this appeal is procedurally appropriate. We have on several occasions previously discussed the State's ability, or lack thereof, to seek appellate review of adverse decisions in criminal matters. "Specifically, we said appellate review of a criminal case is limited to: (1) those situations covered by either constitution or statute; and (2) those situations in which the circuit court acted beyond its jurisdiction." *State v. Macri*, 199 W. Va. 696, 699, 487 S.E.2d 891, 894 (1996) (internal citations omitted), *modified on other grounds by State v. Zain*, 207 W. Va. 54, 528 S.E.2d 748 (1999). Accordingly, we must look to our statute concerning appellate review of a dismissal of a criminal indictment by the State to determine whether it provides authority for this appeal. West Virginia Code § 58-5-30 provides, in pertinent part:

> *Whenever in any criminal case an indictment is held bad or insufficient by the judgment of a circuit court, the State, on the application of the Attorney General or the prosecuting attorney, may appeal such judgment to the Supreme Court of Appeals.* No such appeal shall be allowed unless the state presents its petition therefor to the Supreme Court of Appeals within thirty days after the entry of such judgment.

(Emphasis added). As such, it is "evident by the language contained therein, this statute only applies when an indictment is found to be either bad or insufficient." *Macri*, 199 W. Va. at 699, 487 S.E.2d at 894. Furthermore, in *State ex rel. Forbes v. Canady*, 197 W. Va. 37, 41, 475 S.E.2d 37, 41 (1996), *superseded by rule on other grounds as recognized in State v. Hartman,* 229 W. Va. 749, 735 S.E.2d 898 (2012), we stated that

> [a]n indictment is bad or insufficient for purposes of analysis under W. Va. Code [§] 58-5-30 when within the four corners of the indictment it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she must be prepared to meet; and (2) fails to contain sufficient accurate information to permit a plea of former acquittal or conviction.

Therefore, unless a circuit court has dismissed an indictment because it was either bad or insufficient, the State has no right to a direct appeal.

However, the inquiry does not end there. This Court has further acknowledged that "[a]lthough the State does not have the ability to appeal the dismissal of an indictment when it is not bad or insufficient, we recognize that the State is armed with another right of appellate review

in the form of prohibition." *Forbes*, 197 W. Va. at 42, 475 S.E.2d at 42. In Syllabus point 5 of *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds stated in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017), we set forth the criteria necessary for the State to be awarded a writ of prohibition in a criminal case. Syllabus point 5 of *Lewis* states:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

In the case *sub judice*, the State sought appellate review by means of a direct appeal and not through a petition for a writ of prohibition. Consequently, the only way that this Court has the ability to review this case through a direct appeal is if the matter was dismissed because of a bad or insufficient indictment. Here, Mr. Hubbs challenged his indictment in circuit court because he contended it violated double jeopardy principles. Upon review, the circuit court agreed and concluded that the Marion County two-count indictment should be dismissed because it violated Mr. Hubbs's rights to be free from double jeopardy violations. After reviewing the circuit court's reasoning and conclusion, this Court finds that the two-count indictment was not dismissed by the circuit court for being bad or insufficient as set forth in West Virginia Code § 58-5-30. Instead, the indictment was dismissed as a result of double jeopardy violations. There are simply no allegations that the indictment failed to contain the elements of the offense of murder in the first degree upon a theory of felony murder or that the indictment failed to contain sufficient accurate information to permit a plea of former acquittal or conviction.[4] In fact, the indictment was

---

[4] In a recent matter, *State ex rel. Lorenzetti v. Sanders*, 235 W. Va. 353, 774 S.E.2d 19 (2015), this Court examined the issue of whether an indictment that was dismissed on double jeopardy grounds satisfied the test of whether it was a "bad or insufficient" indictment and could be heard as a direct appeal. Specifically,

> [t]he circuit court entered an order on September 5, 2014, granting [the defendant's] motion to dismiss with regard to the counts alleging that [the defendant] engaged in fraudulent or unauthorized use of her P-Card in violation of W. Va. Code § 12-3-10b. The circuit court determined that counts 2 through 54 of the indictment violated principles of double jeopardy in two ways.

*Lorenzetti*, 235 W. Va. at 356-57, 774 S.E.2d at 22-23. The State brought a writ of prohibition to prohibit the circuit court from dismissing the matter. *Id.*, 235 W. Va. at 357, 774 S.E.2d at 23. The defendant argued that a writ of prohibition should not be granted because the State may seek a direct appeal because the indictment was bad or insufficient. *Id.*, 235 W. Va. at 367, 774 S.E.2d at 33. However, this Court stated that

4

sufficient because Mr. Hubbs was permitted to make a plea of former conviction, and the circuit court granted his motion to dismiss. Accordingly, we find that under this set of facts, the State has no right to a direct appeal of the circuit court's decision pursuant to West Virginia Code § 58-5-30.[5] Moreover, we conclude that the State is not entitled to relief herein by way of a writ of prohibition because the State did not seek this more appropriate route to challenge the indictment's dismissal.[6]

---

[t]he circuit court's order does not indicate that the indictment was bad or insufficient. Additionally, the order does not include any findings that the indictment failed to contain all of the elements of the offense addressed therein, that the indictment failed to apprise [the defendant] of what she must be prepared to meet, or that the indictment failed to contain sufficient accurate information to permit a plea of former acquittal or conviction. It is clear that this indictment was *not* dismissed for being bad or insufficient. *See* [*Forbes*, 197 W.Va. at 41, 475 S.E.2d at 41]. ("[B]ecause there is no contention that the indictment failed to contain all the elements of the offense of malicious assault, or that it did not sufficiently apprise the defendant of what he was prepared to meet, or that it failed to contain sufficient accurate information to permit a plea of former acquittal or conviction, then the potential dismissal of the indictment has nothing to do with its being bad or with its sufficiency."). Thus, W. Va. Code § 58-5-30, does not permit an appeal in this case. Indeed, the Court has recognized that "prohibition is an appropriate method for the State to challenge the dismissal of an indictment." *State ex rel. State v. Gustke,* 205 W.Va. 72, 76, 516 S.E.2d 283, 287 (1999).

*Id.*

[5] While we decline to review this matter on the merits for the reasons stated herein, we encourage prosecutors to communicate with prosecutors of other counties to coordinate local prosecutorial efforts in circumstances such as the present matter "'to best protect the interests of the citizens of [West Virginia] and to insure that an accused's right to fundamental fairness within the judicial system . . . not [be] abused.' *State v. Sallie,* 206 Ga. App. 732, 736, 427 S.E.2d 11 (1992)." *Perkinson v. State*, 273 Ga. 491, 496, 542 S.E.2d 92, 96 (2001).

[6] In *State ex rel. Smith v. Sims*, 235 W. Va. 124, 772 S.E.2d 309 (2015), this Court noted that the matter was originally filed as a direct appeal by the State challenging the dismissal of a juvenile delinquency petition, but the Court dismissed the appeal because

W. Va. Code § 58-5-30 grants the State the right to appeal a criminal case only when the indictment is held bad or insufficient. Since W. Va. Code § 58-5-30 does not provide that the State has the right to appeal the dismissal of a juvenile delinquency petition, this Court finds that there is no constitutional or statutory appeal allowed, *and that this Court does not have jurisdiction to consider this matter on appeal*.

*Id.*, 235 W. Va. at 128 n.5, 772 S.E.2d at 313 n.5 (emphasis added).

Accordingly, for the reasons set forth above, this case is dismissed.

Dismissed.

**ISSUED:**     November 21, 2019

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING AND WRITING SEPARATELY:**
Justice Tim Armstead

Justice Armstead concurring:

As noted in the memorandum decision, the underlying facts of this matter are tragic. According to the State, Mr. Hubbs robbed one victim with a 9 mm Beretta handgun then stole her vehicle and fled the scene. Approximately two hours later, while still driving the stolen vehicle, Mr. Hubbs sped through a red light and collided with another car killing the two occupants in that vehicle.

I concur with the result reached in this case due solely to the procedural posture by which this matter has reached the Court. However, I believe the issue of whether Constitutional protections against double jeopardy would prevent conviction of Mr. Hubbs for both the underling felony and felony murder when the crimes involve separate and distinct victims remains unsettled in West Virginia. At least one jurisdiction has held that, as here, where a charge of felony murder and the underlying felony offense involve separate and distinct victims, conviction of both the felony murder charge and the underlying felony do not constitute double jeopardy. *See Stitt v. State*, 256 Ga. 155, 345 S.E.2d 578 (1986). In *Stitt,* the Defendant robbed a service station attendant in Jackson County, Georgia then fled the scene. While fleeing from deputies from Jackson County, the Defendant entered Hall County, Georgia. While in Hall County, Georgia, the Defendant drove across the center line of a two lane highway and crashed into another vehicle killing a passenger in that vehicle. The Defendant was convicted of the robbery in Jackson County then he was later convicted by a jury in Hall County for felony murder. The Supreme Court of Georgia acknowledged that it had previously held that a criminal defendant could not be convicted both of the underlying felony and of felony murder if there was a single victim. However, it found that this rule did not apply where there are separate victims.

I do not believe that this memorandum decision should be read as closing the door under proper circumstances on a conviction for both the underlying felony, in which the driver of the stolen vehicle was the victim, and felony murder resulting from the collision, in which the victims were the occupants of the vehicle which Mr. Hubbs had not stolen, were tragically killed. Because the memorandum decision disposes of this matter on other grounds and does not decide this issue, I concur in its conclusion.

6