**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0266** (Jefferson County 13-F-73)

**Elizabeth Shanton,**
**Defendant Below, Petitioner**

**FILED**

**June 13, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

This is an appeal by Elizabeth Shanton (hereinafter "the Petitioner"), by counsel Shawn R. McDermott, from a February 23, 2016, order of the Circuit Court of Jefferson County, West Virginia. The circuit court denied her post-trial motions subsequent to her conviction, pursuant to jury verdict, of fifteen counts of fraudulent or unauthorized use of a State Purchase Card (hereinafter "P-Card") , in violation of West Virginia Code § 12-3-10b (1996).[1] The Petitioner was sentenced to one to five years in the penitentiary, but her sentence was suspended, and she was placed on supervised probation for five years and ordered to pay $6,246.43 in restitution. On appeal to this Court, the Petitioner asserts multiple assignments of error, and the State, by counsel Brandon Sims and Shannon Kiser, responds to the Petitioner's assignments of error. Upon consideration of the appendix record, oral argument of counsel, and applicable precedent, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the

---

[1]The version of West Virginia Code § 12-3-10b controlling this case provided:

It is unlawful for any person to use a state purchase card, issued in accordance with the provisions of section ten-a of this article, to make any purchase of goods or services in a manner which is contrary to the provisions of section ten-a of this article or the rules promulgated pursuant to that section. Any person who violates the provisions of this section is guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, or fined no more than five thousand dollars, or both fined and imprisoned.

1

circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Factual and Procedural History

The Petitioner was employed by Shepherd University for approximately fifteen years. She was most recently designated the Assistant Director of the Student Center, Director of Commuter Affairs, and Director of Greek Life. In those roles, she was responsible for student programming, and she purchased items for events such as hospitality meals, giveaways, door prizes, raffle prizes, domestic violence awareness events, and other prizes awarded to students for winning various games.[2] She was issued a P-Card in accordance with West Virginia Code § 12-3-10a (1996) and the West Virginia Code of State Rules and policies promulgated pursuant to that statute.[3]

Due to the expensive and multiple purchases made by the Petitioner, her expenditures were investigated by the Purchase Card Program Oversight Division of the State Auditor's Office and the Commission on Special Investigations. The results of the investigation concluded that the Petitioner had used her P-Card without properly documenting her purchases, failed to save receipts, failed to itemize purchases, and

---

[2]The Petitioner's brief describes her duties as follows: "[O]ne of Ms. Shanton's main job tasks was planning and putting on different events and activities for Shepherd University students with the goal of providing the students with a rich and rewarding experience outside of their academic classes."

[3]West Virginia Code § 12-3-10a provides authority for the establishment of payment of claims made through a state purchasing card program, in conjunction with the West Virginia State Auditor. *See also* W.Va. C.S.R. § 155-7-1 to -7 (establishing policies and procedures for state purchasing card). Section 9.2 of the West Virginia State Auditor's Office Purchasing Card Policies and Procedures provides:

> Misuse/Abuse is the improper, unlawful or incorrect use, compromise or misapplication of the P-Card. Examples include:
> 
> •
> 
> Failure to maintain security protecting your P-Card
> 
> •
> 
> Paying for items in which the P-Card is not authorized for payment
> 
> •
> 
> Purchase of authorized goods or services, at terms (e.g. price, quantity) that are excessive

purchased items which were not for official university programs; thus, a fifty-four count indictment was returned against the Petitioner in April 2013. She was charged with one count of a fraudulent scheme, in violation of West Virginia Code § 61-3-24d (2014), regarding improper appropriation of over $85,000, and fifty-three counts regarding fraudulent or otherwise unauthorized purchases the Petitioner allegedly made with the P-Card.[4]

Discovery ensued subsequent to the Petitioner's indictment. According to the Petitioner's brief, the discovery process was quite arduous; her brief to this Court asserts: "On the more charitable end, the discovery was voluminous and confusing. On the less charitable end, the discovery was a document and file dump meant to overwhelm, confuse, and obfuscate." Much of the discovery was in the form of electronic data; each data disc apparently contained folders and sub-folders of documents and multiple gigabytes of data.

Prior to trial, the circuit court granted the Petitioner's motion to dismiss counts two through fifty-four, based upon the Petitioner's assertion that the indictment violated double jeopardy by charging her with fraudulent scheme *and* the other separate fifty-three counts. In response, the State filed a petition for writ of prohibition in this Court seeking to prohibit enforcement of the dismissal order. This Court granted the writ, as explained in *Lorenzetti v. Sanders*, 235 W.Va. 353, 774 S.E.2d 19 (2015), finding that each purchase was a distinct offense and that the two statutes under which she was charged each contained elements that the other did not. Thus, this Court found no violation of double jeopardy.

A ten-day trial was conducted in December 2015. Testimony was extensive and included the State's primary witness, Mr. Steve Staton, investigator with the Commission on Special Investigations. Mr. Staton's examination continued during almost the entire first week of trial and concerned his exhaustive investigation into the Petitioner's expenditures. The State also presented a witness from the West Virginia State Auditor's Office (hereinafter "Auditor's Office"), Mr. Tim Butler. Several witnesses from Shepherd University also testified, including the Petitioner's supervisors, her co-worker in her department, and the university P-Card coordinator. Through testimony and the introduction of hundreds of exhibits and thousands of pages of spreadsheets and financial documents, these witnesses

---

[4]The jury acquitted the Petitioner on the count of fraudulent scheme, thus obviating the need for its inclusion as an issue on appeal. The other counts in the indictment included allegations that the Petitioner purchased items including designer handbags, perfume, cosmetics, party supplies, wiper blades, platform boots, and underwear with her state-issued P-Card, between October 2010 and August 2012, allegedly totaling $85,932.67, and failed to distribute those items to students or otherwise utilize them for authorized purposes.

provided insight into the Petitioner's expenditures, as well as what she characterizes as a liberal spending policy at Shepherd University. The Petitioner did not testify, but she presented the testimony of a former student who had received gifts at the Petitioner's university-sponsored events. The former student indicated that she had won a raffle for a Coach basket, which included a Coach purse, Coach bag, Coach scarves, and various other Coach items.

The jury returned its verdict on December 15, 2015, finding the Petitioner guilty of fifteen counts of fraudulent or unauthorized purchases.[5] The Petitioner appeals her convictions, asserting six assignments of error. Those assertions will be addressed individually in this Court's discussion below.

## II. Standard of Review

Because each of the Petitioner's multiple assignments of error addresses distinct principles of law, this Court will incorporate the applicable standards of review into the discussion of each separate issue, as necessary.

## III. Discussion

### A. Alleged *Brady v. Maryland* Violation

The Petitioner first contends the circuit court "erred in failing to dismiss the case based upon the State's *Brady* violation where the State failed to disclose favorable exculpatory and impeachment evidence in the possession of the investigating agency for this

---

[5]Specifically, Count 11 was a $54.64 purchase at Advance Auto Parts. Count 14 was a $160.06 purchase at WalMart in Madison, Georgia. Count 17 was a $238.00 purchases of fragrances at Macy's East Store in Charleston, West Virginia. Count 18 was a $752.30 purchase at Paper Plus Retail of Halloween costumes and decorations. Count 19 was a $7.40 purchase at Spirit Halloween. Count 27 was a $219.91 purchase at Fansedge.com. Count 28 was a $110.86 purchase at NFLShop.com. Count 36 was a $416.51 purchase at Ulta Beauty Store. Count 37 was a $1,439.70 United Airlines first class ticket purchase. Counts 39, 40, and 41 were limousine services in New York City. Count 46 was a $752.33 purchase from Sephora. Counts 51 and 52 were hotel rooms at the Marriott in New York City. In total, the Petitioner was convicted of purchasing $5,016.41 worth of "personal purchases" and $1,753.06 in purchases that were deemed to be at "excessive" prices.

prosecution, the West Virginia State Auditor's Office[.]"[6]  Specifically, the Petitioner asserts the State should have disclosed the existence of files from the Auditor's Office containing individual audits on some of her purchases and materials regarding an audit of Shepherd University.

In syllabus point eight of *State v. Black*, 227 W.Va. 297, 708 S.E.2d 491 (2010), this Court explained:

> "There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 401 (1982):  (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial."  Syllabus Point 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).

Although the Petitioner contends that the individual audits allegedly performed by the Auditor's Office were suppressed by the State, she asserted in the circuit court that *Brady* evidence "was disclosed and hidden in all the discovery."  She also asserted at trial that there was "remaining *Brady* evidence that has not yet been disclosed. . . ."  On appeal, she alleges that individual audits would have constituted evidence that her purchases were deemed to be legitimate at the time that they were made.[7]

The State counters these arguments with the assertion that the Petitioner had access to these materials and that a *Brady* violation can not exist where the defendant is in possession of the allegedly exculpatory material and even used it to her benefit at trial.[8]

---

[6]*See Brady v. Maryland*, 373 U.S. 83 (1963) (describing requirement for disclosure of exculpatory evidence).

[7]The Petitioner argues that independent review and approval by Shepherd University would constitute exculpatory evidence and would also impeach the credibility of the State's witnesses regarding the level of oversight by Shepherd University.

[8]The Petitioner used some of the data from the forensic examination files at trial to successfully argue that her November 29, 2011, purchase of Coach merchandise was

(continued...)

Further, the State contends that no additional evidence of individual audits or other data exists; moreover, the State explains that the materials characterized by the Petitioner as "individual audits" were simply matters of routine monitoring by the Auditor's Office, as a part of its role in conducting normal monitoring of the P-Card program generally.

The Petitioner has articulated her reasoning on the first prong of the test for a *Brady* violation;[9] she has asserted that the evidence she believes exists could have possessed exculpatory or impeachment value. As the State asserts, however, the Petitioner has not established either of the remaining two prongs. The second prong requires the Petitioner to demonstrate that evidence was suppressed, either willfully or inadvertently, by the State. *See Youngblood*, 221 W.Va. at 28, 650 S.E.2d at 157. The Petitioner's argument on this issue is very convoluted, and the State emphasizes numerous inconsistencies in the Petitioner's argument. For instance, although the Petitioner's counsel acknowledged at trial that he had thought he possessed all the data underlying the forensic analysis performed on the Petitioner's computers, phones, and flash drives, he requested that data again one week before jury selection began, explaining via email that "[f]or some reason, I can no longer find the disc of the digital forensic analysis. . . . Do you have another copy that you can send me?" The State provided the forensic information disc and report, and that report contains a handwritten notation that shows the document was carbon copied to the Petitioner nearly two years prior to trial. The record is simply unclear regarding whether some of the evidence at issue was previously overlooked by the Petitioner's counsel or was contained in the voluminous discovery. As the State asserts in its brief, "neither counsel could confirm or deny that the information was previously provided." This Court is unable to speculate[10] upon the existence of data not provided to the Petitioner, and we find that the Petitioner has failed to satisfy the requirement to demonstrate suppression.

---

[8](...continued) legitimate, based upon approval of the purchase by Shepherd University and the Auditor's Office. She was acquitted on the charges regarding improper purchases of Coach merchandise.

[9]*See Youngblood*, 221 W.Va. at 28, 650 S.E.2d at 157.

[10]*See Com. v. Willis*, 46 A.3d 648, 650 (Pa. 2012) ("Mere speculation by a defendant, however, will not be sufficient to meet this standard; rather, he must identify specific evidence or information that would have been uncovered, and explain how that evidence or information would have changed the result of the proceeding."); *Com. v. McGill*, 832 A.2d 1014, 1019-20 (Pa. 2003) ("McGill has failed to establish that there was any evidence to suppress, let alone that the Commonwealth willfully or inadvertently suppressed it.").

Moreover, even if suppression by the State had been proven, the final prong of the requirements for a *Brady* violation mandates that the Petitioner demonstrate how she was prejudiced. This Court's review of the record reveals a failure to articulate precisely what evidence was allegedly suppressed, whether such evidence even existed, and how the Petitioner was prejudiced. A *Brady* claim can not be premised upon speculation. *See Banks v. Reynolds,* 54 F.3d 1508, 1518 (10th Cir. 1995) ("'The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard.'" (citations omitted)); *Overton v. State*, 976 So. 2d 536, 562 (Fla. 2007) (holding *Brady* claim based on alleged notes from police brainstorming sessions regarding suspects was merely speculative and defendant's "argument that additional reports with exculpatory information were generated is based on pure speculation, which is insufficient to establish a *Brady* violation."); *Wright v. State,* 857 So.2d 861, 870 (Fla. 2003) (finding no *Brady* violation where exculpatory effect of disputed documents merely speculative); *Gore v. State*, 846 So.2d 461, 466-67 (Fla. 2003) (holding *Brady* claim insufficiently pled where defendant presented no factual basis for assertion that disputed item ever existed or contained exculpatory information). Upon thorough review of this matter, we find that the Petitioner has failed to establish a *Brady* violation; we consequently find no merit to her assignment of error on this issue.

B. Alleged False Testimony Before the Grand and Petit Juries

The Petitioner also contends the circuit court should have dismissed this case based upon the State's alleged solicitation of false testimony from witnesses at the grand jury and petit jury levels. In particular, the Petitioner alleges that Mr. Staton tainted the grand jury by presenting false and misleading testimony indicating that the Petitioner did not provide certain gifts to students. The evidence at trial, however, revealed that students did receive some items purchased by the Petitioner. On cross-examination, Mr. Staton also admitted he had not personally interviewed the students who attended the Petitioner's university-sponsored events, had not sought a search warrant for her vehicle or residence, and had not otherwise found any of the purchased items in her possession. The evidence presented by the Petitioner also identified emails between Mr. Staton and Shepherd University's general counsel regarding the existence of students who had received various prizes from the Petitioner. In response to the Petitioner's assertions in this assignment of error, the State asserts that inconsistencies in grand jury testimony, later clarified and developed at trial, do not constitute false testimony warranting reversal.[11]

---

[11]The State emphasizes that while the Petitioner alleges "false" testimony with regard to counts 2, 4, 5, 10, 12, 13, 17, 23, 25, 26, 36, 46, 49 and 50, she was convicted of only three of those fourteen counts.

This Court has encountered myriad arguments by criminal defendants seeking to challenge the validity of grand jury indictments on the basis of allegedly incompetent or false evidence. As this Court noted in *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989), "[t]his contention, however, often runs counter to the function of the grand jury, which is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial." *Id.* at 665, 383 S.E.2d at 847 (internal citations omitted). As identified in *Pinson*, "the question before this Court is whether the defendant made a prima facie case that such fraud occurred before this grand jury." *ld.*

In the syllabus of *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977), this Court also observed: "Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency."

Based upon this Court's review of the record and arguments of counsel, we find that the Petitioner has failed to establish that any testimony before the grand or petit jury constituted willful and intentional fraud. Any discrepancies in testimony, at either the grand or petit jury levels, on the issue of how many students may have received items purchased by the Petitioner could have been fully explored during cross-examination. *See United States v. Lombardozzi,* 491 F.3d 61, 80 (2d Cir. 2007) ("Finally, even if we were to find that the grand jury indictment was defective, all of the discrepancies between [an investigator's] grand jury testimony and the evidence at trial were submitted to the petit jury which found Lombardozzi guilty beyond a reasonable doubt. It is well settled that a guilty verdict at trial 'remedies any possible defects in the grand jury indictment.'"); *Pinson*, 181 W.Va. at 667, 383 S.E.2d at 849 (approving reasoning "that errors before a grand jury, such as perjured testimony, could easily be corrected during a trial with its incumbent procedural and evidentiary safeguards."). Based upon the foregoing, we find no merit to the Petitioner's argument regarding false or misleading testimony.

## C. Evidence of "Blending"

The Petitioner also alleges error in the circuit court's decision to permit testimony from a State witness, Mr. Butler, regarding the practice of "blending," in which an individual attempts to conceal inappropriate purchases by combining them with legitimate purchases. The Petitioner contends the introduction of this evidence constituted the inappropriate debut of a new and previously-undisclosed theory of fraud, not addressed in the indictment. She contends this created a prejudicial variance between the evidence presented at trial and the indictment.

8

The practice of "blending" was included in the testimony of Mr. Butler in response to questions regarding what "kinds of transactions . . . would alert you there could be fraudulent activity on a cardholder's account." By way of explanation of identifying potential instances of fraud, Mr. Butler, a certified public accountant and fraud examiner, testified that blending is a term used "to describe purchasing activity that may include or we have reason to believe includes both legitimate business related purchases and expenditures mixed in with what is later found to be purchases that were of a personal nature." That concept of "blending" had not been discussed prior to that point in trial and did not appear within the indictment. Thus, the Petitioner contends that she was prejudiced by this type of "expert" testimony and the resulting "variance" between the indictment and the evidence presented at trial. She also argues that she had "belabor[ed] under that apparent misimpression . . . that [she] was charged with the entirety of each purchase in the Indictment being illegal."

The State asserts that the circuit court was clearly within its discretionary power to determine the admissibility of this evidence. *See* Syl. Pt. 5, *State v. Davis*, 232 W.Va. 398, 752 S.E.2d 429 (2013) (internal quotes and citations omitted) ("Rulings on the admissibility of evidence are largely within a trial court's sound discretion and shou1d not be disturbed unless there has been an abuse of discretion."). Moreover, the State argues that Mr. Butler was not introduced as an expert and was merely testifying based upon his history of fraud investigations.[12]

Upon the Petitioner's objection to Mr. Butler's testimony on "blending," the circuit court reasoned as follows:

> So, the fact that an accountant would get up and describe almost as a person would attack a blending of fiduciary funds, or a commingling of accounts, that a person in a position to make purchases might not dedicate all of those things purchased to a legitimate, only some, frankly, doesn't seem surprising under the evidence.
>
> It doesn't seem like a technical or expert opinion. It seems more of a sort of common sense conclusion of a possibility that could exist. . . .

---

[12]The State also asserts that even if Mr. Butler had been introduced as an expert, the admission of his testimony would have been within the sound discretion of the trial court.

9

The Petitioner cites *State ex rel. Day v. Silver*, 210 W.Va. 175, 556 S.E.2d 820 (2001), for the proposition that allegations must be specifically asserted in the indictment, and she contends introduction of the concept of the "blending" legitimate purchases with unauthorized purchases was a prejudicial variance between trial evidence and the indictment. In *Silver,* this Court held that an indictment on larceny charges is sufficient if it identifies with "specificity the particular items of property which are the subject of the charge by specifically describing said property. . . ." *Id*. at 177, 556 S.E.2d at 822, syl. pt. 5. In syllabus point seven of *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982), we explained that "[t]he variance between the indictment and the proof is considered material where the variance misleads the defendant in presenting his defense to the charge and exposes him to the danger of being put in jeopardy again for the same offense." *See also State v. Crowder*, 146 W.Va. 810, 836, 123 S.E.2d 42, 57 (1961).

In similar vein, this Court held in pertinent part of syllabus point six of *State v. Corra*, 223 W.Va. 573, 678 S.E.2d 306 (2009): "If the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment." Where a defendant is "not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury." *Id.*

The alleged variance in this case relates only to the introduction of testimony regarding the potential for fraudulent use of a P-Card, in a manner that combines legitimate purchases with fraudulent ones. This Court is unconvinced that the absence of mention of the blending concept in the indictment misled the Petitioner, subjected her to additional burdens of proof, or otherwise prejudiced her. This case is markedly different from a situation such as that encountered in *Corra*, in which this Court reversed a conviction where the defendant had been indicted for "furnishing alcoholic liquor" but was convicted of the entirely different crime of "furnishing nonintoxicating beer." *Id.* at 576, 678 S.E.2d at 309. In that case, we found the "variation between the indictment and the evidence . . . destroyed defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Id.* As we specified in *Corra*, however, "not every variation between an indictment and proof at trial creates reversible error." *Id.*

The evidence of "blending" in this case was presented by way of explanation of how some of the allegedly fraudulent purchases could have been made. However, the Petitioner was clearly apprised of the allegations against her in the indictment, and she had ample opportunity through the trial process to cross-examine witnesses with regard to the allegations against her. The introduction of the concept of blending does not create a variance with the indictment; blending is merely a manner in which the purchases could have

10

been accomplished. A minimal difference between the language utilized in the indictment and the concepts evaluated at trial is not fatal to the State's case. We consequently find no merit to the Petitioner's claims on this issue.

## D. Instructional Error

The Petitioner also contends the circuit court erred in providing a jury instruction allowing the jury to convict if it found that she made purchases at an "excessive" price. The jury instruction provided:

> Before the Defendant, Elizabeth A. Libby Shanton, can be convicted of fraudulent or unauthorized use of a purchasing card by purchasing unauthorized items at excessive terms, prices or quantities, as charged in each of Counts 37, 39, 40 & 41; the State of West Virginia must for each of these counts overcome the presumption that the Defendant, Elizabeth A. Libby Shanton, is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that . . .[the Petitioner used] her state issued purchasing card . . . [t]o make a purchase . . . [f]or unauthorized goods or services at terms of price or quantity that the Defendant knew were excessive.

This instruction[13] was premised upon the policy prohibiting purchases of "authorized goods or services, at terms (e.g. price, quantity) that are excessive" and was discussed by the circuit court and counsel prior to its submission to the jury. Although counsel for the Petitioner did not offer a modification of the instruction or an alternative instruction,[14] counsel did object to the instruction based upon the absence of any "definition

---

[13]This issue specifically concerns Counts 37, 39, 40, and 41 of the Indictment, charging the Petitioner with the unlawful purchase of a first-class airline ticket; a New York limousine service for $99.82; a New York limousine service for $99.00; and a New York limousine service for $114.54.

[14]An alternative instruction could have been offered by the defense.

An instruction offered by the defense should be given if the proposed instruction: (1) is substantively correct, (2) is not covered substantially in the charge actually delivered to the jury, and (3) involves an important issue in the trial so the trial court's failure to give the instruction seriously impairs the

(continued...)

11

in the rules or anywhere else what excessive is" and "the subjective nature of it and also the fact that the violation as being excessive is not mentioned in the indictment in any specification." The Petitioner also argues that the State, for the first time at trial, disclosed that Counts 37, 39, 40, and 41were premised on the theory that she had made some legitimate purchases at an "excessive" price, thus violating the regulations regarding usage of the P-Card.[15]

First, we note that usage of a potentially subjective term does not necessarily render an instruction invalid. Employment of abstract words such as "habitual," "repeated," and "excessive" in a county's animal noise control ordinance, for instance, was upheld in

---

[14](...continued)
defendant's ability to effectively present a defense.

*State v. Hinkle*, 200 W.Va. 280, 285, 489 S.E.2d 257, 262 (1996) (citing *State v. Derr*, 192 W.Va. 165, 180, 451 S.E.2d 731, 746 (1994)). As explained in *Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.*, 800 P.2d 505 (Wyo. 1990),

It is the duty of the attorneys in each case to determine which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court, has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial *and a proper instruction was offered in its place.*

*Id.* at 512 (citation omitted and emphasis added).

[15]This Court rejects the Petitioner's contention regarding a material variance between the indictment and the evidence on this issue for the same reasons we rejected her similar contention regarding the inclusion of testimony regarding blending. We find no basis for a conclusion that she was misled, subjected to an added burden of proof, or was otherwise prejudiced by inclusion of the concept of excessive purchases. The indictment on counts 37, 39, 40, and 41 clearly charged the Petitioner with purchasing "in a manner contrary to the provisions of law. . . ." Purchase of "authorized goods or services, at terms (e.g. price, quantity) that are excessive" was clearly identified as improper by Section 9.2 of the West Virginia State Auditor's Office Purchasing Care Policies and Procedures, as quoted in its entirety above.

*State v. Taylor*, 495 S.E.2d 413 (N.C. Ct. App. 1998), and did not render the ordinance unconstitutionally vague or indefinite. *Id.* at 415. The court found such "words have through their daily use become meaningful so that average person should have sense of what is prohibited." *Id.* As this Court has repeatedly explained, reasonable certainty is sufficient in criminal statutes. "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. Pt. 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974).

Moreover, "the question of whether a jury was properly and adequately instructed is a question of law, and, thus, our review is *de novo*." *State v. Hinkle*, 200 W.Va. 280, 285, 489 S.E.2d 257, 262 (1996). In examining an instruction, this Court is not charged with the task of determining whether the charge "was faultless in every particular but whether the jury was mislead [sic] in any way and whether it had an understanding of the issues and its duty to determine those issues." *Id.* "Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy." *State v. Bradshaw*, 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995).

In this case, the jury was instructed regarding the State's burden of proof and was precisely informed that the State must prove all allegations beyond a reasonable doubt. We find "the instructions as a whole, in light of all the evidence in the case, were sufficient to afford due process under the standard by which we review alleged instructional error." *State v. LaRock*, 196 W.Va. 294, 309, 470 S.E.2d 613, 628 (1996).

Significantly, the Petitioner's assignments of error on appeal do not challenge the *sufficiency* of the evidence of the "excessiveness" or reasonableness of her purchases; she simply asserts instructional error in permitting the jury to deliberate upon what she characterizes as the vague, subjective concept of "excessiveness." Nor does either party direct this Court toward any problematic trial testimony squarely addressing the excessive nature of the Petitioner's purchases.[16] With regard to the purchase of the first class airline ticket, however, we note that State's Exhibit Number Sixty indicates that a first class ticket from Baltimore, Maryland, to Ontario, California, was purchased by the Petitioner for

---

[16]If the Petitioner found fault with any particular trial testimony regarding the issue of excessiveness of her purchases, she should have cited those passages to this Court. "Judges are not like pigs, hunting for truffles. . . ." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).

$1,439.70. Mr. Staton testified that a first class ticket was not considered to be a permissible state purchase. Mr. Staton was thereafter cross-examined on the issue of the first class ticket purchase and whether it was directly authorized by the Petitioner's supervisors. Similarly, Mr. Staton was cross-examined regarding his findings on the issue of the Petitioner's purchases of limousine services, and evidence was adduced regarding the base rates for transportation services in comparison with the purchases made by the Petitioner. The State argued before the jury that the Petitioner's purchase of a first-class airline ticket and limousine services rather than taxis on three separate occasions was excessive.

Even if the Petitioner had included an assignment of error challenging the sufficiency of the evidence on the issue of what could be considered "excessive," as opposed to reasonable or warranted, we have consistently recognized the substantial difficulties inherent in challenging a conviction based upon sufficiency of the evidence. In syllabus point five of *State v. Broughton*, 196 W.Va. 281, 470 S.E.2d 413 (1996), for instance, this Court stated:

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

We find no merit in the Petitioner's assignment of error regarding the instruction on alleged excessive purchases.

### E. Unconstitutional Vagueness of Statute

The Petitioner also argues the statute regarding fraudulent use of a P-card is unconstitutionally vague on its face and as applied to this case. As quoted above, West Virginia Code § 12-3-10b provided:

14

It is unlawful for any person to use a state purchase card, issued in accordance with the provisions of section ten-a of this article, to make any purchase of goods or services in a manner which is contrary to the provisions of section ten-a of this article or the rules promulgated pursuant to that section. Any person who violates the provisions of this section is guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, or fined no more than five thousand dollars, or both fined and imprisoned.

The Petitioner contends the statute "does not provide a person of ordinary intelligence fair notice of what conduct is prohibited. . . ." She also contends the P-Card standards are an "incomprehensible jumble of laws."

In syllabus point one of *State v. Rutherford*, 223 W.Va. 1, 672 S.E.2d 137 (2008), this Court stated that "[t]he constitutionality of a statute is a question of law which this Court reviews *de novo*." As this Court noted in *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011), a reviewing court must proceed cautiously when evaluating a constitutional challenge because a statute "is presumed to be constitutional." *Id*. at 413, 710 S.E.2d at 104; *see also State v. Yocum*, 233 W.Va. 439, 447, 759 S.E.2d 182, 190 (2014). Additionally, in syllabus point three of *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178 (1967), this Court explained that "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment."

Although this Court did not specifically address the constitutionality of West Virginia Code § 12-3-10b in *Lorenzetti*, we did find the statute unambiguous. 235 W.Va. at 361, 774 S.E.2d at 27. As set forth above, a statute is to be enunciated with sufficient definiteness to provide fair notice of what prohibited conduct is contemplated by the statute. The statute at issue herein adequately informed the Petitioner of what actions would be considered criminal in nature. We find no merit to the Petitioner's assertions of unconstitutional vagueness.

F. Sufficiency of Indictment

As a final assignment of error, the Petitioner alleges the circuit court erred in denying her motion to dismiss the indictment for insufficiency. Syllabus point six of *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999), provides guidance on the issue of sufficiency of an indictment:

15

An indictment is sufficient under Article Ill, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

The Petitioner contends the indictment in this case failed to place her on fair notice of the charges against her, and she freely admits that she is attempting to "renew[] her argument submitted to this Court in response to the State's writ of prohibition" in *Lorenzetti*. We find no merit to the Petitioner's contentions and her attempts to resuscitate her prior unsuccessful arguments. This Court made it abundantly clear in *Lorenzetti* that the indictment is sufficient. 235 W.Va. at 365 n.9, 774 S.E.2d at 30 n.9.

## IV. Conclusion

This Court's review of this matter reveals no reversible error. We consequently affirm the judgment of the Circuit Court of Jefferson County.

Affirmed.